UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOLLIS SANDERS,

    Petitioner,

v.

CATHLEEN STODDARD,

    Respondent.

Case No. 15-10104
Honorable Laurie J. Michelson
Magistrate Judge R. Steven Whalen

**OPINION AND ORDER
DENYING PETITION FOR WRIT OF HABEAS CORPUS [1]**

Hollis Sanders was convicted of first-degree criminal sexual conduct after he pled no contest to the charge. He was sentenced to 40 to 70 years. Pursuant to 28 U.S.C. § 2254, Sanders now seeks a writ of habeas corpus from this Court. The petition raises two claims: (1) ineffective assistance of trial counsel based upon erroneous advice on the sentencing guidelines and (2) an improper upward departure from the sentencing guideline range. Neither claim warrants habeas corpus relief.

**I.**

On March 25, 2009, Sanders went into Jackson High School in Jackson, Michigan.[1] (R. 18-1, PID 426.) While there, a female student left class to use the restroom. (*Id.*) As the young woman left the bathroom stall, Sanders pushed her into a stall and locked the door. (*Id.*) He threw her against the wall, unbuttoned her pants, and digitally penetrated her. (R. 18-1, PID 425–426.) The young woman screamed and Sanders slapped her saying, "Bitch shut up before I kill you. I

---

[1] The statement of facts is based on Sanders' March 27, 2009 written statement and the victim's handwritten statement, which formed the factual basis for Sanders' no-contest plea. (R. 19-1, PID 445–46.)

have a gun in my pocket." (R. 18-1, PID 428.) He pushed her to the floor, but the young woman was able to slide into the adjacent stall and run back to her classroom, screaming for help. (R. 18-1, PID 428–29.) Her teacher chased Sanders out into the parking lot and eventually wrestled him to the ground and returned him to the school, where the young woman identified him as the perpetrator. (R. 18-1, PID 419.)

In a written statement, Sanders admitted to digitally penetrating the female student. (R. 18-1, PID 425.)

Sanders was charged with first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b, and fourth-offense habitual offender, Mich. Comp. Laws § 769.12. Sanders entered into an agreement to plead "no contest" to one count of first-degree criminal sexual conduct in exchange for the prosecutor dropping the fourth-offense habitual offender charge (R. 19-1).

On November 25, 2009, the state trial court held a plea hearing. (*Id.*) During the hearing, the judge asked whether Sanders understood that the statutory maximum for first-degree criminal sexual conduct was life in prison. (R. 19-1, PID 441.) Sanders responded that he understood. (*Id.*) The judge then asked Sanders' counsel, Wendell Jacobs, for Sanders' sentencing guideline range. (R. 19-1, PID 442.) Jacobs responded that the guideline range for his minimum sentence was 135 to 225 months (11.25 to 18.75 years). (*Id.*) Neither the judge nor the prosecutor contested that range nor mentioned that it may change. (*Id.*) Before asking for his plea, the judge confirmed Sanders' understanding that "there's been absolutely no agreement by the court, and in terms of limiting its sentence that it could impose within the proper limits of the law." (R. 19-1, PID 444.) Sanders then pled no contest. (R. 19-1, PID 445.)

Sanders was sentenced on January 7, 2010. (R. 14-3.) The presentence report recommended a guideline range twice as high as the one discussed at sentencing: 270 to 450 months (22.5 to 37.5 years) for a minimum sentence. Jacobs did not object to the body of the presentence report, but did object to the scoring of several of the offense variables. (R. 14-3, PID 116–23.) The trial court overruled all of Jacobs' objections. (*Id*.) During allocution, Sanders stated that he did not rape the victim, and that a recently-obtained DNA test failed to show the presence of any of his genetic material. (R. 14-3, PID 126–29.) He stated that if he had known about this evidence earlier, he would not have pled guilty. (R. 14-3, PID 126.)

The court decided to exceed the top of the guideline range of 37.5 years for a minimum sentence and imposed a 40-year minimum and 70-year maximum sentence. (R. 14-3, PID 145–46.) In discussing the basis for the upward departure, the court recounted Sanders' long criminal history—five prior felony convictions, 12 misdemeanor convictions, "extensive assaultive criminal history," and a "pattern of assaultive behavior, especially toward women." (R. 14-3, PID 141.) The court also recounted the facts of the case, the psychological effects the attack had on the victim, and Sanders' statement that he would have killed the victim had he raped her. (R. 14-3, PID 141–44.) Judgment was entered on January 7, 2010. (R. 14-1, PID 59–60.)

A week later, Sanders sought and was granted appointment of appellate counsel. (R. 14-1, PID 60.) His appellate counsel filed a motion to withdraw Sanders' plea on the grounds that his trial counsel (Jacobs) was ineffective for misadvising him about the sentencing guidelines. (*See* R. 14-4.) The trial court held an evidentiary hearing on the claim. (R. 14-5.) At the hearing, Jacobs testified that his calculations led to a guideline minimum sentence between 135 and 225 months (11.25 to 18.75 years) and that he did not believe the facts warranted the offense variable scores

that Sanders received. (R. 14-5, PID 164.) He further stated that he never advised Sanders that a different range might be calculated at the sentencing hearing. (R. 14-5, PID 170.)

Sanders confirmed Jacobs' account. He testified that Jacobs told him that if he accepted his plea offer, his guideline range would be anywhere from 135 to 225 months. (R. 14-5, PID 180.) Sanders stated that Jacobs never said the guideline range might be higher. (R. 14-5, PID 180–81.) Sanders testified that had he known the guideline range would end up being so high, he would not have pled and instead would have gone to trial. (*Id.*)

Yet on cross-examination, Sanders testified that he knew that a trial court could exceed the sentencing guidelines. (R. 14-5, PID 187.) Sanders further confirmed that he had sent several letters during pretrial proceedings requesting a plea bargain and in one of the letters, indicated that he did not wish to put the young victim through a trial. (R. 14-5, PID 189–95.)

The trial court denied Sanders' motion to withdraw his plea, finding that Jacobs did not perform deficiently and, in any event, that Sanders was not prejudiced by any deficient performance. (R. 14-5, PID 232–34.)

Sanders filed an application for leave to appeal in the Michigan Court of Appeals alleging ineffective assistance of counsel, improper upward departure, and erroneous scoring of offense variables. (R. 14-6.) The Michigan Court of Appeals denied Sanders' application "for lack of merit in the grounds presented." (R. 14-7, PID 328.)

Sanders appealed this ruling to the Michigan Supreme Court, but his application for leave to appeal was denied "because [the court was] not persuaded that the questions presented should be reviewed by this Court." (R. 14-7, PID 270.)

In September 2012, Sanders filed a motion for relief from judgment in the state trial court. (R. 14-8, PID 344–45.) The motion stated four grounds for relief: that counsel was constitutionally ineffective; that the court abused the guidelines by departing 30 months above the guideline adopted by the court; that the court never proved increased fear and predatory conduct which formed the basis of two of the offense-variable scores; and that the judge was not "in the right frame of mind" because of alleged drug and alcohol abuse. (R. 14-8.) The motion was denied for "a complete lack of legal merit." (R. 14-9, PID 346–47.)

In January 2015, Sanders filed a petition for habeas corpus in this Court. (R. 1.) He raises two issues: that counsel was ineffective by misinforming him as to his possible sentence range and that his sentence was based upon facts not proved by a jury, in contravention of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (R. 1.)

Concerned that the petition was barred by the applicable one year statute of limitations, the Court issued two show cause orders for why the petition should not be dismissed. (R. 6, 8.) Sanders responded with a declaration stating that he had mailed his petition to the court in 2011. (R. 9.) After waiting a few years, he realized that, for some reason, the petition was never received and so he then refiled it in 2015. (*Id.*) The Court found that the representation was a satisfactory initial showing of timeliness and vacated the two show cause orders. (R. 10.)

The State does not challenge Sanders' claim that he initially submitted his habeas corpus petition in 2011. This predates the filing of his 2012 motion for relief from judgment and the state

court's ruling. Thus, the Court will not consider this motion in ruling on the petition.[2] Instead, it will focus only on Sanders' motion to withdraw his plea.

**II.**

The Antiterrorism and Effective Death Penalty Act (AEDPA) (and 28 U.S.C. § 2254 in particular) "confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). Thus, if a claim was "adjudicated on the merits in State court proceedings," this Court cannot grant habeas corpus relief on the basis of that claim "unless the adjudication of the claim . . . resulted in a decision" (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). But if the state courts did not adjudicate a claim "on the merits," this "'AEDPA deference' does not apply and [this Court] will review the claim *de novo*." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

A state-court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

---

[2] Indeed, if Sanders did file in 2011, the claims he raised in his 2012 motion for relief from judgment were not included in that petition. And Sanders never moved to amend his petition after his motion for relief from judgment was denied.

"[T]he 'unreasonable application' prong of [§ 2254(d)] permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).

## III.

### A.

The Court starts with Sanders' ineffective-assistance-of-counsel claim. Sanders says Jacobs was ineffective when, before the plea hearing, he told Sanders that the guideline range for his minimum sentence would be 135 to 225 months. Sanders alleges that had he been properly advised on the sentence range (i.e., that it was in fact double), he would not have pled and instead would have insisted on going to trial.

Success on an ineffective-assistance-of-counsel claim requires Sanders to point to evidence of his trial counsel's deficient performance and then explain how that deficient performance prejudiced his legal defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). And where § 2254(d) applies, Sanders must show that the state court unreasonably applied *Strickland*. *See Harrington*, 562 U.S. at 86.

The Court focuses on the prejudice prong "as there can be no finding of ineffective assistance of counsel without prejudice." *Phillips v. Bradshaw*, 607 F.3d 199, 216 (6th Cir. 2010). The *Strickland* test as applied to guilty pleas requires that Sanders show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

7

To determine whether AEDPA applies to this claim, the Court must determine whether the claim was adjudicated on the merits by the state court. And, more specifically, whether the prejudice prong was adjudicated on the merits. *See Rayner v. Mills*, 685 F.3d 631, 637 (6th Cir. 2012). Here, there are three opinions that adjudicated the ineffective-assistance-of-counsel claim: a decision from the state trial court denying Sanders' motion to withdraw his plea, an order denying Sanders' leave for appeal to the Michigan Court of Appeals, and an order denying Sanders' leave for appeal to the Michigan Supreme Court. (R. 14-7, PID 270; R. 14-7, PID 328; R. 14-5, PID 232–34; R. 14-7, PID 309.)

Two of these decisions were on the merits. The trial court decision first denying Sanders' motion to withdraw his plea explained that Jacobs' performance was not deficient and explained why, even if it was deficient, Sanders could not show prejudice. (R. 14-5, PID 232–34.) The Michigan Court of Appeals' order denied leave to appeal "for lack of merit in the grounds presented" (R. 14-7, PID 328), which the Sixth Circuit has held is an adjudication on the merits, *see Werth v. Bell*, 692 F.3d 486, 491–94 (6th Cir. 2012). And, because neither *Strickland* prong was explicitly mentioned, AEDPA deference should be applied to both prongs. *See Rayner*, 685 F.3d at 637. Lastly, the Michigan Supreme Court order denied leave for appeal "because [the court is] not persuaded that the questions presented should be reviewed by this Court." This has not been found to be an adjudication on the merits. *See Hynes v. Birkett*, 526 F. App'x 515, 519 (6th Cir. 2013).

So which opinion should the court review? Under current Sixth Circuit precedent, it does not matter because courts should only review a state court's *decision* regardless of its *reasoning*. *Davis v. Carpenter*, 798 F.3d 468, 475 (6th Cir. 2015); *see also Holland v. Rivard*, 800 F.3d 224,

235–36 (6th Cir. 2015). And the last decision on the merits and the last explained decision on the merits are the same: the court of appeals and the trial court both rejected Sanders' ineffective-assistance-of-counsel claim. Therefore, the role of the Court "is to 'determine what arguments or theories supported' the state-court decision or 'could have supported' it; and then to determine whether 'fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of' the Supreme Court." *Davis*, 798 F.3d at 475 (quoting *Harrington*, 562 U.S. at 102). A case currently before the Supreme Court could result in a decision that would require courts to "look through" the summary decision to the reasoned decision and apply AEDPA to the earlier reasoned decision. *See Wilson v. Sellers*, 137 Sup. Ct. 1203 (2017). As will be explained, even if that were the case, Sanders' claim still fails. In other words, whichever opinion is reviewed, the result is the same.

The Court will first proceed under current Sixth Circuit precedent that will only review the state court's decision, regardless of its reasoning. Under this framework, there is an argument that supports the state court's decision that fairminded jurists would agree is consistent with *Hill* and other Supreme Court precedent. Any incorrect guideline information Jacobs may have provided Sanders prior to the plea was remedied by the colloquy. *See Boyd v. Yurkins*, 99 F. App'x 699, 705 (6th Cir. 2004). Sanders was told at his plea hearing that the statutory maximum for the offense was life. (R. 19-1, PID 440.) He was further told at the hearing that the plea did not include any term limiting the sentence. (R. 19-1, PID 444.) Sanders said he understood; Sanders still pled to the offense. (R. 19-1, PID 445.)

Also, at the sentencing hearing, when Sanders was given an opportunity to speak after the discussion of the higher guidelines, he did not raise his counsel's erroneous advice on the guideline

9

range or mention the guidelines at all. (R. 14-3, PID 125–45.) Instead, Sanders' comments focused on DNA evidence:

> Like I said, if I woulda knew there was no forensic DNA, and I'm not trying to be disrespectful or anything, but if I would knew that there was no forensic DNA the last time I came in front of you when you asked me if I understood the guidelines and I told you yeah, I woulda just went on and let you went on with the – with the jury trial. I just found out that there was no forensic DNA. And I heard that from a family member. I didn't' even—I wasn't—I didn't even hear it from him. He didn't send me no letter to let me know that there was no forensic DNA or I woulda took it to jury trial.

(R. 14-3, PID 132.) Although Sanders did say that he would not have pled, the reason was not his counsel's erroneous advice on the guidelines. Sanders did not mention that until the hearing on his motion to withdraw the plea—three months after he was sentenced. (R. 14-5.) And even at that hearing, Sanders admits that he knew, based on his prior experience in the criminal justice system and pleading guilty in at least four prior instances, that judges could exceed the guidelines. (R. 14-5, PID 187.)

Further still, Sanders faced significant, incriminating evidence, which is relevant in assessing the likelihood Sanders would have passed on the plea and gone to trial. *See Hill*, 474 U.S. at 59–60. In particular, he signed a statement admitting he digitally penetrated the victim (R. 18-1, PID 425), school video showed him exiting the girl's restroom with his pants down (R. 14-5, PID 168–69), and the victim identified him after her teacher tackled him at the school (R. 18-1, PID 429). Fairminded jurists would agree that, based upon the plea colloquy, Sanders' focus on the DNA evidence, and the overwhelming evidence against him, a finding that Sanders did not establish a reasonable probability that he would have gone to trial had his lawyer not misadvised him on the lower guideline range, is consistent with *Hill* and other Supreme Court precedent.

Even if the Court were to look through to the reasoned trial court opinion, Sanders' claim would still fail. It appears that, in analyzing prejudice, the state trial court unreasonably applied Supreme Court precedent in finding that Sanders failed to show "any real reasonable probability of acquittal on the basis of that representation." (R. 14-5, PID 233). That is not the *Strickland* test. *Walker v. Hoffner*, 534 F. App'x 406, 412 (6th Cir. 2013) ("a reasonable probability of acquittal is not a requirement to be shown by a defendant seeking to demonstrate prejudice resulting from his counsel's deficient performance; rather, a defendant is required to demonstrate a reasonable probability of a different outcome—a somewhat lower burden for a defendant") (citing *Williams v. Taylor*, 529 U.S. 362, 397, 411 (2000); *Strickland*, 466 U.S. at 694). But even if the trial court misapplied *Strickland*, Sanders would have only cleared § 2254(d). He would still need to show that there was a constitutional violation. *See Strickland*, 466 U.S. at 691–96. But as fully explained above, because of the plea colloquy, because he fixated on the DNA evidence even after learning of the adjusted sentencing guidelines, and because of the overwhelming evidence against him, Sanders cannot show prejudice even on *de novo* review and therefore cannot show a constitutional violation based upon ineffective assistance of counsel. His claim fails.

**B.**

Sanders next argues that his sentence was improper because the facts used to score offense variables needed to be found by a jury pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (R. 1, PID 18–21.)

This claim does not appear to have been properly exhausted. In state court, Sanders only challenged his sentence pursuant to state law. (R. 14-6.) Specifically, he argued that the judge failed to sufficiently articulate why an upward departure was necessary or why the departure was

proportionate to the offense and offender and that the record did not support his offense variable scoring. (*See* R. 14-6.) It thus appears that Sanders never presented an *Apprendi* claim to any state court.

Assuming without deciding that Sanders' *Apprendi* claim is unexhausted, the Court nonetheless proceeds to the merits. The Court may do so because it ultimately concludes that none of Sanders' claims warrant relief. *See Rockwell v. Yukins*, 217 F.3d 421, 424 (6th Cir. 2000) ("In AEDPA, Congress similarly made clear that the only circumstance under which mixed petitions may be considered by a district court is where the court determines that the petition must be denied in its entirety."); *see also* 28 U.S.C. § 2254(b)(2).

Sanders asserts that the state court judge violated *Apprendi* by considering information that was not related to a prior conviction. (R. 1, PID 21.) *Apprendi* requires that any fact (aside from a prior conviction), that increases the penalty above the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. 530 U.S. at 476. The statutory maximum for the offense Sanders pled to was life in prison. Mich. Comp. Laws § 750.520(b)(2)(a). Sanders' sentence was less than life so it was below the statutory maximum. *Apprendi* does not apply.

**IV.**

In order to appeal the Court's decision, Sanders must obtain a certificate of appealability. To do so, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Here, jurists of reason would not debate the Court's analysis with respect to either of Sanders' claims. The Court will therefore deny a certificate of appealability.

**V.**

Accordingly, the Court DENIES Sanders' petition for a writ of habeas corpus, and DENIES a certificate of appealability.

SO ORDER.

                                                   s/Laurie J. Michelson
                                                   LAURIE J. MICHELSON
Dated: March 2, 2018                   U.S. DISTRICT JUDGE

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 2, 2018.

                                                   s/Keisha Jackson
                                                   Case Manager